# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDERSON THURSTON, | CASE NO. 1:08-cv-00342-AWI-GBC (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| ARNOLD SCHWARZENEGGER, et al., | (Doc. 39) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

**FINDINGS and RECOMMENDATIONS**

## I.    Procedural History

Plaintiff Anderson Thurston ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on February 27, 2008.  The Court screened Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915A, and found that it stated cognizable claims against defendants: 1) Chief Medical Officer Dr. F. Igbinosa; 2) G. Cassesi; 3) Associate Warden John Ahlin; 4) K. Vilaysane; 5) Former CDCR Secretary James Tilton; 6) CDCR Undersecretary Scott Kernan; 7) Warden James Yates; and 8) N. Grannis ("Defendants") for violation of Plaintiff's Eighth Amendment Rights. (Docs. 20, 25).  May 21, 2010, Defendants filed a motion for summary judgment. (Doc. 39).  Plaintiff filed his opposition on June 24, 2010. (Doc. 40).  Defendants filed their evidentiary objections on July 14, 2010. (Doc. 43).  Defendants filed their reply on July 15, 2010. (Doc. 44).  The motion is deemed submitted.

///

///

1

## II.   **Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party:

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id*.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable

1   jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d

2   1433, 1436 (9th Cir. 1987).

3        The parties bear the burden of supporting their motions and oppositions with the papers they

4   wish the Court to consider and/or by specifically referencing any other portions of the record they

5   wish the Court to consider.  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031

6   (9th Cir. 2001).  The Court will not mine the record for triable issues of fact.  *Id.*

7

8   **III.    Eighth Amendment Conditions of Confinement Creating Substantial Risk of Serious**
        **Harm**

9        **A.    Factual Background**

10

11       Plaintiff is an African American prisoner who was incarcerated at Pleasant Valley State

12  Prison (PVSP) from July 25, 2007 to October 15, 2008.  (Doc. 39-1, MSJ at 3:4-3:5; Doc. 20,

13  Amend. Compl. at 3).  Before being transferred to PVSP, Plaintiff was incarcerated at Calipatria

14  State Prison.  (Doc. 20, Amend. Compl. at 3).  While at Calpatria State Prison, Plaintiff became ill

15  and was admitted to Pioneers Memorial Hospital from May 28, 2007 to June 12, 2007.  (Doc. 39-18,

16  Ex. M;  Doc. 40, Opposition at 2; Amend. Compl. at 3; Doc. 39-1, MSJ at 3:10-3:12; Doc. 20).

17       PVSP is located in the San Joaquin Valley (located in the southern part of the Central Valley)

18  where Valley Fever (Coccidioidomycosis) is endemic.  *E.g.* Defendants' Exhibits (Docs. 39-6

19  (discussing protocol for institutions "within the endemic area"); 39-7 (referring to "(hyperendemic)

20  area institutions" in the Central Valley)).  As the term "endemic" entails, Valley fever is not unique

21  to PVSP.  Rather, the occurrence of Valley Fever is acute in the region where PVSP is located, the

22  San Joaquin Valley.

23       The record contains evidence that Valley Fever is an illness contracted by breathing spores

24  of the fungus Coccidioides Immitis into one's lungs.  (Doc. 39-3, Igbinosa Decl. at ¶¶ 8-9).  The

25  Coccidioides fungus is found in the soil and infection occurs in environments that have periods of

26  rain followed dry and windy weather that disperses the fungus spores in to the air.  (Doc. 39-3,

27  Igbinosa Decl. at ¶¶ 8-9).  An infected person may develop the following flu-like symptoms which

28  can range from minor to severe: fever; cough; chest pain; chills; night sweats; headache; fatigue;

shortness of breath; joint aches; and a red, spotty rash.  (Doc. 39-3, Igbinosa Decl. at ¶ 33).  The disease can spread from the lungs to the brain, bones and skin and in extreme cases, the dissemination of Valley Fever can result in meningitis and death.  (Doc. 39-3, Igbinosa Decl. at ¶ 12).

On August 3, 2006, John Dovey, Director of the Division of Adult Institutions and Dr. Peter Farber-Szekrenyi, Director of the Division of Correctional Health Care Services, issued a memorandum to the prison health care managers, wardens, classification and parole representatives and the correction counselor III-Reception center.[1]  (Doc. 39-6, Def. Ex. A).  The 2006 memorandum categorized what criteria would be considered as qualifying certain inmates as exceptionally vulnerable to developing severe symptoms as a result of exposure to Coccidioides spores while at specific Central Valley Institutions which included PVSP.  (Doc. 39-3, Igbinosa Decl. at ¶14); (Doc. 39-6, Def. Ex. A).  The 2006 memorandum identified the following criteria to identify those inmates most susceptible for developing coccidioidomycosis: 1) HIV infected inmates with a T-cell count less than 250; 2) inmates with a history of lymphoma; 3) inmates who have underwent a solid organ transplant; 4) inmates undergoing chronic immuno therapy; 5) inmates suffering from a chronic lung disease which requires oxygen therapy; and 6) inmates undergoing chemotherapy treatment for cancer.  (Doc. 39-3, Igbinosa Decl. at ¶15; Doc. 39-6, Def. Ex. A).

According to the 2006 memorandum, inmates meeting any of the criteria were not to be transferred to PVSP and those inmates already at PVSP who met the criteria were to be immediately transferred to other institutions where they would be less susceptible to contracting Valley Fever.  (Doc. 39-3, Igbinosa Decl. at ¶¶16-17; Doc. 39-6, Def. Ex. A).  After receiving the August 2006 memorandum, Dr. Igbinosa instructed the medical staff to review all the inmates records to identify those that met the at risk criteria outlined in the memorandum and transfer them from PVSP or

---

[1]On November 20, 2007, Susan L. Hubbard, Director of the Division of Adult Institutions and Dr. Dwight Winslow, Statewide Medical Director within the Plata Support Division, issued an updated memorandum to the prison health care managers, chief medical officer, wardens, directors of nursing, classification and parole representatives, the correction counselor III-Reception center and classification staff representatives.  (Doc. 39-7, Def. Ex. B).  The 2007 memorandum added inmates with HIV or moderate to severe Chronic Obstructive Pulmonary Disease requiring oxygen therapy to the criteria.  (Doc. 39-3, Igbinosa Decl. at ¶18; Doc. 39-7, Def. Ex. B).

prevent them from transferring into PVSP.  (Doc. 39-3, Igbinosa Decl. at ¶¶ 20-22).  If a physician or Receiving and Release (R&R) nurse determined that an inmate meets the criteria listed in the 2006/2007 memorandum, they would draft a Form 128-C medical chrono recommending transferring the inmate to another institution.  (Doc. 39-3, Igbinosa Decl. at ¶ 24).

### B. Plaintiff's Allegations in Amended Complaint

Plaintiff alleges that he has been diagnosed with: 1) congestive heart failure; 2) pneumonia; 3) acute renal failure; 4) degenerative disc disease; 5) rotator cuff tears to both shoulders; 6) asthma; 7) an infection of unknown origin; 8) diabetes and 9) a long history of hypertension.  (Doc. 20, Amend. Compl. at p. 3).  Plaintiff argues that being an elderly African-American, with diabetes, congested heart failure, a history of asthma, a recent case of pneumonia and who is not native to the endemic area where PVSP is located-that these factors makes Plaintiff vulnerable to a substantial risk of serious harm from suffering serious complications if he were to contract Valley Fever.  (Doc. 20, Amend. Compl. at pp. 4-5).  According to Plaintiff, he told Dr. K. Vilayasane of his concerns for being at risk for Valley Fever and requested from Dr. K. Vilaysane that he be transferred to another prison out the endemic area.  (Doc. 20, Amend. Compl. at p. 5).  In response to Plaintiff voicing his concerns, Dr. K. Vilaysane "acknowledged . . . that Plaintiff [was] at high risk for contracting Valley Fever while at PVSP, but refused to authorize or recommend a transfer for Plaintiff."  (Doc. 20, Amend. Compl. at p. 5).

Plaintiff filed appeals regarding addressing his concerns of contracting Valley Fever if he was not transferred from PVSP.  (Doc. 20, Amend. Compl. at p. 5).  Plaintiff's appeals were denied by Dr. K. Vilaysane and affirmed by HPSI G. Cassessi, Chief Medical Officer Dr. F. Igbinosa, Associate Warden John Ahlin and Warden James Yates.  Plaintiff's Director's level review was denied by Chief of Inmate Appeals, N. Grannis because Plaintiff did not meet the CDCR guidelines for inmate transfer based on health issues.  (Doc. 20, Amend. Compl. at pp. 5-6).

Plaintiff contends that since the CDCR policies and guidelines do not include being an African American, diabetes, congested heart failure, asthma, and pneumonia as high risk factors in contradiction to its own studies and conclusions from independent organizations that adopting and

implementing said guidelines amounts to deliberate indifference to the substantial risk of serious harm to Plaintiff. (Doc. 20, Amend. Compl. at p. 6). Plaintiff argues that James Tilton and Scott Kernan in their official capacity as the secretary and undersecretary of the CDCR were responsible for adopting guidelines identifying inmates vulnerable to a substantial risk of serious complications from Valley Fever and are liable for the guidelines which served as the basis for denying Plaintiff's requests for transfer to avoid contracting Valley Fever. (Doc. 20, Amend. Compl. at p. 6).

Plaintiff alleges in his amended complaint that the named Defendants knew or should have known that Plaintiff was at high risk of contracting Valley Fever because of his race and his preexisting medical conditions. (Doc. 20, Amend. Compl. at pp. 6-7). Plaintiff seeks punitive damages, damages for mental anguish and psychological distress and originally sought injunctive relief to be transferred from the prison. (Doc. 20, Amend. Compl. at pp. 3, 7). Plaintiff further claims that the disease can manifest twenty or more years in the future and seeks compensatory damages for future harm to cover the costs of care and treatment should he get Valley Fever in the future. (Doc. 20, Amend. Compl. at pp. 3, 7).

### C.   Defendants' Motion for Summary Judgment

#### 1.   Official Capacity Liability

Plaintiff alleges that Defendants James Tilton and Scott Kernan, in their official capacities as secretary and undersecretary of the CDCR generated and ratified the criteria which purposefully omitted certain risk factors for determining the threat of serious complications from Valley Fever to certain inmates. (Doc. 20, Amend. Compl. at p. 6). Defendants Tilton and Kernan assert that they did not decide, approve or ratify the criteria to determine which inmates were the most at risk for complications from Valley Fever. (Doc. 39-1, MSJ at 2:13-2:18; 4:23-4:24). As evidence, Defendants direct the Court to their declarations. (Doc. 39-5, Tilton Decl. at ¶¶ 3-4); (Doc. 39-4, Kernan Decl. at ¶¶ 3-4). Defendants Tilton and Kernan argue that since they did not decide, approve or ratify the criteria, there lacks the necessary causal link to between the alleged constitutional deprivation and Defendants Tilton and Kernan in order to establish liability under 42 U.S.C. §1983. (Doc. 39-1, MSJ at 9:25-10:17).

## 2. **Deliberate Indifference**

Defendant argue that there cannot be any deliberate indifference because the criteria established in the 2006 and 2007 memorandums "Criteria" exonerate prison officials from believing that factors other than those listed in the Criteria could place prisoners in a substantial risk of serious harm. (Doc. 39-1, MSJ at 12:8-12:10, 12:27-13:2; 13:12-13:13). In their motion, Defendants state that "[b]ecause the Criteria listed medical conditions posing a risk for Valley Fever, Defendants were not deliberately indifferent in following it." (Doc. 39-1, MSJ at 13:1-13:2). Defendants argue that any refusal to transfer Plaintiff from PVSP amounted to a mere difference in medical opinion and that the prison officials properly exercised their professional judgment in relying on the Criteria as grounds for refusing Plaintiff's request for transfer. (Doc. 39-1, MSJ at 13:3-13:11).

## 3. **Risk of Serious Harm**

### a. **Statistical Evidence Indicating Likelihood of Suffering Serious Harm**

Defendants argue that Plaintiff did not face a substantial risk of serious harm. (Doc. 39-1, MSJ at 10:24). Defendants argue that Plaintiff was "not any more susceptible to Valley Fever than any other inmate" while at PVSP. (Doc. 39-1, MSJ at 2:1-2:2). According to Dr. Igbinosa's declaration:

> In 2007 and 2008, only 3-5 percent of PVSP inmates tested proved to be positive for coccidioidomycosis.
> Of all persons who test positive for coccidioidomycosis infection, approximately 60 percent are able to fight the infection naturally and suffer no symptoms whatsoever. Of the 40 percent who do develop symptoms, approximately 90 percent will only experience mild flu-like symptoms or uncomplicated pneumonia. Only 5 to 10 percent of those who develop symptoms will suffer from complicated pneumonia, and only 0.5 to 1 percent of those showing symptoms will experience dissemination. Dissemination occurs when the disease spreads outside the lungs to the brain, bones, and skin.

(Doc. 39-3, Igbinosa Decl. at ¶¶ 10-11). Based on these stated statistics, and the fact that Plaintiff's medical history does not contain medical conditions that are among those listed in the Criteria, Defendants argue that "[t]here is nothing in [Plaintiff's] medical history that indicates he is a high risk for contracting Valley Fever or be likely to suffer complications if he contracts it." (Doc. 39-1, MSJ at 5:26-5:27; 10:24-11:11; Doc. 39-3, Igbinosa Decl. at ¶ 29). As evidence, Defendants direct

the Court to the abovementioned statistics in Dr. Igbinosa's Declaration and Defendants' Exhibit C where the Plaintiff responded "no" to each of the criteria factors to ascertain whether Plaintiff was at risk for Valley fever.  (Doc. 39-8, Ex. C; Doc. 39-3, Igbinosa Decl. at ¶¶ 10-11, 29).

Defendants argue that merely because a prison is located in a Valley Fever endemic region, that is not enough to demonstrate that the prisoners are vulnerable to a substantial risk of serious harm from a Valley Fever infection.[2]  In particular, Defendants cite to *Moreno v. Yates*, which found that in light of the defendants' statistics and the fact that prison staff is exposed to the same air as the prisoners, the risk of getting infected with Valley fever is not "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Moreno v. Yates*, 2010 WL 1223131, at 1 (E.D. Cal. 2010).  Additionally, Defendants argue that because Plaintiff did not contract Valley Fever and is no longer at PVSP, he does not have an Eighth Amendment claim. (Doc. 39-1, MSJ at9:5-9:21).

### b.    Congestive Heart Failure

Defendants assert that Plaintiff "does not have any significant congestive heart failure, and it is questionable if he has any congestive heart failure at all."  (Doc. 39-1, MSJ at 2:6-2:7; 3:16-3:17).  As evidence, Defendants submit Dr. Igbinosa's Declaration and Defendants' Exhibits E through J.  (Doc. 39-3, Igbinosa Decl. at ¶¶ 35-36; Doc. 39-10, Ex. E; Doc. 39-11, Ex. F; Doc. 39-12, Ex. G; Doc. 39-13, Ex. H; Doc. 39-14, Ex. I; Doc. 39-15, Ex. J).  Defendants state that having mild congestive heart failure does not make a person more at risk to contract Valley Fever nor does it make a person more likely to suffer serious complications if infected.  (Doc. 39-1, MSJ at 6:6-8).  As evidence, Defendants submit Dr. Igbinosa's Declaration and Defendants' Exhibits E through J. (Doc. 39-3, Igbinosa Decl. at ¶¶ 31, 35-36; Doc. 39-10, Ex. E; Doc. 39-11, Ex. F; Doc. 39-12, Ex. G; Doc. 39-13, Ex. H; Doc. 39-14, Ex. I; Doc. 39-15, Ex. J).

---

[2] Defendants cite to various Eastern District Court cases to support this contention: *Perkins v. Yates*, 1:08-cv-01282-GSA PC, 2010 WL 148195, at 3 (E.D. Cal. January 12, 2010); *Moreno v. Yates*, No. 1:07-CV-1404-DGC, 2010 WL 1223131 at 2 (E.D. Cal. March 31, 2010); *Dorsey v. Tilton*, No. 08-cv-0919-JAH (JMA), 2009 WL 5030642, at 9 (E.D. Cal. Dec. 16, 2009); *King v. Avenal State Prison*, No. 1:07-cv-01283-AWI-GSA (PC), 2009 WL 546212, at 4 (E.D. Cal. Mar. 4, 2009).

### c.      Pneumonia

Defendants state that Plaintiff's pneumonia was cured before Plaintiff left Pioneer Memorial Hospital and was cured forty-three days before he arrived at PVSP.  (Doc. 39-1, MSJ at 2:8-2:9, 3:17-3:19).  As evidence, Defendants submit Dr. Igbinosa's Declaration and Defendants' Exhibits F, K through N.  (Doc. 39-3, Igbinosa Decl. at ¶ 37; Doc. 39-16, Ex. K; Doc. 39-17, Ex. L; Doc. 39-18, Ex. M; Doc. 39-19, Ex. N; Doc. 39-11, Ex. F).  Defendants state that a history of resolved pneumonia does not make a person more at risk to contract Valley Fever nor does it make a person more likely to suffer complications if infected.  (Doc. 39-1, MSJ at 6:6-7, 6:9).  As evidence, Defendants direct the Court to Dr. Igbinosa's Declaration.  (Doc. 39-3, Igbinosa Decl. at ¶ 31).

### d.      Acute Renal Failure

Defendants state that Plaintiff's renal failure was cured before Plaintiff left Pioneer Memorial Hospital and was cured forty-three days before he arrived at PVSP.  (Doc. 39-1, MSJ at 2:8-2:9, 3:17-3:19).  As evidence, Defendants submit Dr. Igbinosa's Declaration and Defendants' Exhibits F, M, O and P.  (Doc. 39-3, Igbinosa Decl. at ¶ 38; Doc. 39-11, Ex. F; Doc. 39-18, Ex. M; Doc. 39-20, Ex. O; Doc. 39-21, Ex. P).  Defendants state that a history of resolved renal failure does not make a person more at risk to contract Valley Fever nor does it make a person more likely to suffer complications if infected. (Doc. 39-1, MSJ at 6:6-7, 6:10). As evidence, Defendants direct the Court to Dr. Igbinosa's Declaration.  (Doc. 39-3, Igbinosa Decl. at ¶ 31).

### e.      Degenerative Disc Disease

Defendants state that having a degenerative disc disease does not make a person more at risk to contract Valley Fever nor does it make a person more likely to suffer complications if infected. (Doc. 39-1, MSJ at 6:6-7, 6:14).  As evidence, Defendants direct the Court to Dr. Igbinosa's Declaration.  (Doc. 39-3, Igbinosa Decl. at ¶ 31).

### f.      Rotator Cuff Tears to Both Shoulders

Defendants state that having rotator cuff tears does not make a person more at risk to contract Valley Fever nor does it make a person more likely to suffer complications if infected.  (Doc. 39-1, MSJ at 6:6-7, 6:15).  As evidence, Defendants direct the Court to Dr. Igbinosa's Declaration.  (Doc.

39-3, Igbinosa Decl. at ¶ 31).

### g.   Asthma

Defendants state that having asthma does not make a person more susceptible to contracting Valley Fever nor does it make a person more likely to suffer complications if infected.  (Doc. 39-1, MSJ at 2:10-2:12; 6:6-7, 6:14).  As evidence, Defendants direct the Court to Dr. Igbinosa's Declaration.(Doc. 39-3, Igbinosa Decl. at ¶ 31).

### h.   Febrile Infection

Defendants state that Plaintiff's febrile infection was cured before Plaintiff left Pioneer Memorial Hospital and was cured forty-three days before he arrived at PVSP.  (Doc. 39-1, MSJ at 2:8-2:9).  As evidence, Defendants submit Dr. Igbinosa's Declaration and Defendants' Exhibit F. (Doc. 39-3, Igbinosa Decl. at ¶¶ 31, 35; Doc. 39-11, Ex. F).  Defendants state that having a history of resolved febrile infection does not make a person more at risk to contract Valley Fever nor does it make a person more likely to suffer complications if infected.  (Doc. 39-1, MSJ at 6:6-7, 6:11). As evidence, Defendants direct the Court to Dr. Igbinosa's Declaration.  (Doc. 39-3, Igbinosa Decl. at ¶¶ 31, 35).

### i.   Diabetes

Defendants state that having diabetes does not make a person more at risk to contract Valley Fever nor does it make a person more likely to suffer complications if infected.  (Doc. 39-1, MSJ at 2:10-2:1; 6:6-7, 6:18).  As evidence, Defendants direct the Court to Dr. Igbinosa's Declaration. (Doc. 39-3, Igbinosa Decl. at ¶ 31).

### j.   History of Hypertension

Defendants state that having a history of high blood pressure (hypertension) does not make a person more at risk to contract Valley Fever nor does it make a person more likely to suffer complications if infected.  (Doc. 39-1, MSJ at 2:10-2:12; 6:6-7, 6:17).  As evidence, Defendants direct the Court to Dr. Igbinosa's Declaration.  (Doc. 39-3, Igbinosa Decl. at ¶ 31).

### k.   Other Medical Conditions not Listed in Plaintiff's Complaint

Although Plaintiff does not specifically allege that having thrombocytosis and an upper

10

respiratory infection makes him more susceptible to contracting Valley Fever and more likely to suffer complications if infected, Defendants address these medical conditions as well.  Defendants state that having thrombocytosis and an upper respiratory infection does not make a person more at risk to contract Valley Fever nor does it make a person more likely to suffer complications from Valley Fever if infected.  (Doc. 39-1, MSJ at 6:6-7, 6:12-13).  As evidence, Defendants direct the Court to Dr. Igbinosa's Declaration.  (Doc. 39-3, Igbinosa Decl. at ¶ 31).

### l.     African Descent

Defendants assert that being an African American is not the Criteria established by the CDCR for a medically necessary transfer to avoid substantial risk of suffering serious complications from Valley Fever.  (Doc. 39-1, MSJ at 2:19-2:22; 12:8-12:11).  As evidence, Defendants direct the Court to the Dr. Igbinosa's Declaration describing the listed criteria and Defendants Exhibits A and B. (Doc. 39-3, Igbinosa Decl. at ¶15; Doc. 39-6, Def. Ex. A (2006 memorandum listing criteria); Doc. 39-7, Def. Ex. B (2007 memorandum listing criteria)).

### m.     Age ("Elderly")

Defendants do not explicitly address age–a factor that Plaintiff alleges to be relevant to determining whether he should be among the at-risk group eligible for transfer from PVSP.

### n.     Non-Native to Endemic Region

Defendants do not explicitly address the relevance of Plaintiff not being a native to a region where Valley Fever is endemic– a factor that Plaintiff alleges to be relevant to determining whether he should be among the at-risk group eligible for transfer from PVSP.

### 5.     Deliberate Indifference to Serious Medical Need

### a.     Existence of a Claim and Available Damages Absent Injury

Defendants also frame the issue of substantial risk of future harm as one of deliberate indifference to a serious medical need and argue that there cannot be such a claim where a plaintiff did not suffer any physical injury.  (Doc. 39-1, MSJ at 8:22-8:26).  Moreover, Defendants argue that Plaintiff cannot recover compensatory damages for mental or emotional harm absent physical injury

that is more than de minimis injury.  (Doc. 39-1, MSJ at 8:28-9:3).  Defendants assert that Plaintiff did not have Valley Fever and tested negative for Valley Fever on November 15, 2007, December 27, 2007 and September 11, 2008.  (Doc. 39-1, MSJ at 3:20-3:23).  As evidence, Defendants direct the Court to Dr. Igbinosa's Declaration.  (Doc. 39-3, Igbinosa Decl. at ¶ 34).

### b.     Deliberate Indifference to Serious Medical Need

Defendants argue that they cannot be deliberately indifferent to a serious medical need because Plaintiff did not have a condition that was listed in the 2006 and 2007 memorandums.  (Doc. 39-1, MSJ at 12:27-12:28).  Defendants assert that they could not issue a medical chrono to transfer Plaintiff unless Plaintiff had a condition that was listed in the criteria.  (Doc. 39-1, MSJ at 12:28-13:1).  Defendants argue that Plaintiff's claim that he should have been transferred based on conditions not listed in the criteria amounts to a mere difference in medical opinion which is insufficient to prevail in an § 1983 claim.  (Doc. 39-1, MSJ at 13:3-13:11).

### 6.     Liability for Denial of Inmate Appeal

Defendants assert that prison officials who deny a plaintiff's administrative grievance or fail to act are not liable under § 1983 on a theory that knowledge of a serious medical need and failure to act constituted acquiescence in the constitutional conduct.  (Doc. 39-1, MSJ at 13:27-14:1).  (Doc. 39-1, MSJ at 14:8-14:10).  Defendants argue that this is especially true in cases where prison officials without medical expertise are relying on opinions of prison physicians in upholding decisions subject to the grievance process.  (Doc. 39-1, MSJ at 14:3-14:4).  Thus, Defendants argue that Chief Grannis, Warden Yates and Associate Warden Ahlin should not be liable for their role in affirming the grievance decisions that were adverse to Plaintiff.  (Doc. 39-1, MSJ at 14:8-14:10).  Moreover, Defendants argue that the medical staff, Cassesi, Igbinosa and Vilaysane are not liable because they relied on the Criteria in forming their medical opinions.  (Doc. 39-1, MSJ at 14:8-14:10).

### 7.     Qualified Immunity

Defendants argue that they are entitled to qualified immunity on the grounds that there is no clearly established law that African-American inmates or inmates with any of Plaintiff's alleged

medical conditions must be transferred where Valley Fever is present.  (Doc. 39-1, MSJ at 16:16-16:17).  Defendants also argue that since unpublished district court opinions find that incarceration at PVSP does not pose a risk of substantial harm of getting Valley Fever, that a reasonable prison official would not believe that refusing to transfer an inmate that did not meet the criteria would be wrong.  (Doc. 39-1, MSJ at 16:17-16:21).

**C.     Plaintiff's Opposition**[3]

**1.     2006/2007 Memorandum Criteria**

In his opposition, Plaintiff argues that since the 2006 and 2007 memorandums state that "[r]eturn from a . . . Hospital" is a source which can be used to identify inmates who would qualify to be on the list of criteria for at risk patients, that entails that prisoners who returned from a hospital is a risk factor that would necessitate transfer.  (Doc. 40, Opposition, 4:14-4:20; Doc. 39-6, Ex. A, Doc. 39-7, Ex. B).

**2.     Evidentiary Support for Alternative Risk Factors**

Attached to Plaintiff's amended complaint and opposition are newspaper articles, copies from various website sources including the Center for Disease Control (CDC) and an excerpt of resolution findings from a version of California Senate Bill SCR 24 (Westlaw, May 18, 2009) regarding Valley Fever Awareness Month.  (Doc. 40, Opposition).  To support the argument that his race places him at a substantial risk of serious harm, Plaintiff submits a copy from the CDC website identifying the following groups at high risk for Valley Fever dissemination: people of African and Asian descent, pregnant women during the third trimester, and immuno-compromised persons.  (Doc. 40, Opposition, 5:2-5:12; Doc. 40 at 20, Plaintiff's Ex. 3).  Plaintiff also cites an unidentified website source to support the contention that people who are at increased risk for severe pulmonary disease as a result from Valley Fever include: the elderly, those with chronic congestive heart failure, chronic diabetes, chronic obstructive pulmonary disease, cancer and conditions which require corticosteroid

---

[3] The Court will summarize Plaintiff's Opposition to the extent that such summary provides new information or argument.

use such as HIV.  (Doc. 40, Opposition, 5:2-5:12; Doc. 40 at 21, Plaintiff's Ex. 3).        **3** .

### 3.     Substantial Risk of Serious Harm-Statistical Evidence

Plaintiff alleges that the rate of contracting Valley Fever at PVSP is 247 times the rate of those who live in the general endemic region.  (Doc. 40, Opposition, 5:26-6:1).  Plaintiff reaches this conclusion from comparing the statistics provided in Dr. Igbinosa's Declaration ("In 2007 and 2008, only 3-5 percent of PVSP inmates tested proved to be positive for coccidioidomycosis") to statistics Plaintiff found on the general rate of contracting Valley Fever in Arizona.  (Doc. 40, Opposition, 6).  Plaintiff assumes that the three to five percent stated by Dr. Igbinosa means an average four percent of the entire PVSP population gets Valley Fever and then compares the four percent statistic with one provided by the CDC finding that individuals living in Arizona get Valley Fever at a rate of .015 percent.  (Doc. 40, Opposition at   5:23-6:11; Doc. 40 at 21, Plaintiff's Ex. 3).  Plaintiff also cites a Sacramento Bee newspaper article from September 9, 2007, stating that the article "quotes Fresno County health authorities' finding that 'about 10 percent of the prison's population'" caught Valley Fever in 2007."  (Doc. 40, Opposition at  6:12-6:17; Doc. 40 at 29, Plaintiff's Ex. 5).  From this article Plaintiff asserts that the rate of Valley Fever infections at PVSP are drastically higher than that of the general population.  (Doc. 40, Opposition at  6:12-6:17; Doc. 40 at 29, Plaintiff's Ex. 5).

### D.     Defendants' Reply[4]

### 1.     Triable Issues of Fact

Generally, Defendants argue that Plaintiff has failed to raise any triable issues of fact and failed to present any admissible evidence to negate the evidence and arguments presented by Defendants in their motion for summary judgment.  (Doc. 44, Reply at 1:26-3:6; 5:1-5:21).

### 2.     Substantial Risk of Serious Harm-Statistical Evidence

Regarding Plaintiff's claim that the risk of Valley Fever is 247 times greater than that of individuals living in Valley Fever endemic areas, Defendants argue that such statement is erroneous for several reasons.  (Doc. 44, Reply at 6:24-9:2).  In addition to the evidence being hearsay,

---

[4] The Court will summarize Defendants' Reply to the extent that such summary provides new information or argument.

Defendants point out that Plaintiff mischaracterizes Defendants' statistics which stated that 3 to 5 percent of inmates *who were tested* proved positive for Valley Fever, not that out of the entire prison population, three to five percent of the inmates got Valley Fever. (Doc. 33, Objections; Doc. 44, Reply at 7:3-7:8). Defendants also assert that Plaintiff's source for statistical figures contradicts his argument since the same source states that 10 to 50 percent of individuals living in endemic areas are "skin-test positive." (Doc. 44, Reply at 7:14-7:18). Defendants also observe that Plaintiff's statistics do not cite the sources of the figures or how the statistics were obtained. (Doc. 44, Reply, 7:24-7:25). Moreover, Defendants argue that Plaintiff's statistics taken from 2005 are not relevant to compare to a prison population in 2007 and 2008. (Doc. 44, Reply at 8:1-8:2). Defendants also observe that Plaintiff's exhibit is misleading since it combines information from two different websites (CDC and "library.adoption.com") to make it appear that the second page is derived from the CDC in Plaintiff's Exhibit 3. (Doc. 44, Reply, 8:3-8:6). Although Defendants point out that the pages from Plaintiff's Exhibit 3 are from two different sources, Defendants argue that the disclaimer from "library.adoption.com" which explicitly state that the accuracy of the information contained in the source is not guaranteed applies to the statistics cited on the CDC page. (Doc. 44, Reply at 7:19-7:23; Doc. 40, Opposition at 21, Ex. 3). Defendants also argue that Plaintiff's statistic taken from the Sacramento Bee article does not state that the statistics were taken from 2007 and therefore is not relevant. (Doc. 44, Reply at 8:7-8:14). Defendants argue that the date of the statistics is significant because the incidence of Valley Fever in 2005 to 2006 was higher since it was before the prisons implemented policies to reduce the risk to inmates. (Doc. 44, Reply at 8:15-9:2).

### 3.    Evidentiary Support for Alternative Risk Factors

In addition to Defendants' admissibility and relevance objections to Plaintiff's evidence regarding whether being an African American places him at high risk for sufferings serious consequences from Valley Fever, Defendants argue that Plaintiff's evidence does not support his argument; does not quantify what "increased risk" is and argues that the unidentifiable internet source Plaintiff cites explicitly states that it does not guarantee the accuracy of the information. (Doc. 33, Objections; Doc. 44, Reply at 9:16-10:14).

///

**E.**     **Analysis**

   **1.**     **Legal Standard-Conditions of Confinement Creating Substantial Risk of Serious Harm**

The Eighth Amendment protects against future harm to inmates. *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Although prison authorities may not be deliberately indifferent to an inmate's current health problems, ignoring a condition of confinement that is sure or very likely to cause serious illness and needless suffering in the future violates a prisoner's Eighth Amendment Right to be free from cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993). For Plaintiff to prevail on his Eighth Amendment claim, he "must objectively show that he was deprived of something sufficiently serious, and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)(internal quotations omitted). In this case, Plaintiff must prove the objective prong, that he is a member of a class that would be vulnerable to a substantial risk of serious harm. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Thomas v. Ponder*, 611 F.3d 1144, 1150-51 (9th Cir. 2010). Then Plaintiff must prove the subjective prong: that prison officials were aware of a "substantial risk of serious harm" to inmate and that prison officials had no "reasonable" justification for the deprivation in spite of the risk. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Thomas v. Ponder*, 611 F.3d 1144, 1150-51 (9th Cir. 2010). To satisfactorily demonstrate that prison officials were aware of the substantial risk, Plaintiff proving the obviousness of the risk posed by the deprivation is sufficient to demonstrate that prison officials were aware of the substantial risk. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

The physical injury requirement in 42 U.S.C. § 1997e(e) does not bar claims entirely, but merely restricts the available types of relief. *See Oliver v. Keller*, 289 F.3d 623, 629-630 (9th Cir. 2002). A prisoner is not required to establish an actual physical injury caused if the deliberate

indifference created a serious risk of harm such that it rose to a violation of the prisoner's civil rights. *See Oliver v. Keller*, 289 F.3d 623, 629-630 (9th Cir.2002).  Where a prisoner establishes that his or her constitutional rights were violated, a plaintiff in such a case can recover nominal and  possibly punitive damages even if the plaintiff sustained no physical injury.  *See Oliver v. Keller*, 289 F.3d 623, 629-630 (9th Cir. 2002).  Where a pro se complaint seeks compensatory or punitive damages, such claim is consistent with seeking nominal damages and should be so construed.  *See Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002).

Plaintiff claims that he posses certain attributes and medical conditions which make him equally as vulnerable to a substantial risk of serious harm from Valley Fever as those inmates who meet the criteria in the 2006 and 2007 memorandums and that prison officials were aware of the harm but chose not to take action to mitigate or prevent the harm by refusing to transfer Plaintiff out of PVSP.  (Doc. 20, Amend. Compl.).  Plaintiff claims that because of his: 1) age; 2) race as an African American; 3) status as a non-native to the endemic region; and 4) pre-existing medical conditions–that these factors made him exceptionally vulnerable to a substantial risk of serious harm from contracting Valley Fever at PVSP where it is endemic to the region.  (Doc. 20, Amend. Compl.).

Defendants present three arguments as to why Plaintiff fails in satisfying the objective prong in this Eighth Amendment analysis: 1) Dr. Igbinosa's declaration establishes that certain medical conditions do not make Plaintiff vulnerable to a substantial risk of serious harm; 2) attributes not listed by the criteria established in the 2006 and 2007 memorandums demonstrate that those attributes do not make Plaintiff vulnerable to a substantial risk of serious harm; and 3) statistical evidence demonstrates that Plaintiff is not vulnerable to a substantial risk of serious harm. (Doc. 39-1, MSJ).  The Court will address these arguments in turn.

**2.      Dr. Igbinosa's Declaration as it Relates to Whether Plaintiff Faces Substantial Risk of Serious Harm**

In establishing Dr. Igbinosa's qualifications to support the credibility of his medical statements, he declares the following:

1. I am employed by the California Department of Corrections and Rehabilitation (CDCR) as a Chief Medical Officer and I am assigned to Pleasant Valley State Prison (PVSP) in Coalinga, California.

2. I attended the University of Benin and received a Doctor of Medicine degree in 1987. I did my internship at King-Drew Medical Center in 2001. I received my residency training from King-Drew Medical Center in 2004. I am currently licensed to practice medicine in the State of California.

3. I began my employment with the California Department of Corrections and Rehabilitation (CDCR) in October 2005. From February 2006 to the present I have served as Chief Medical Officer at the Pleasant Valley State Prison (PVSP) in Coalinga, California.

4. At the primary care level, the management of Valley Fever (coccidioidomycosis) does not require a separate credential or additional training in coccidioidomycosis. However, I have been engaging in several clinical activities that primarily focus on coccidioidomycosis and its impact on prison healthcare. For this purpose, I joined the National Coccidioidomycosis Study Group in 2006. This group meets at least once every year to discuss the latest information relevant to the prevention, diagnosis, and treatment of coccidioidomycosis. Some of the meetings, seminars, trainings, and lectures that I have actively participated in include:

• August 23 – 26, 2006: 6th International Symposium and Scientific Assembly on Coccidioidomycosis, Stanford University, California

• March 19, 2007: Lecture on coccidioidomycosis by Pappagianis, M.D., of U.C. Davis. Given at PVSP Interdepartmental Meeting, Coalinga, California

• March 29, 2007: 51st National Scientific Assembly of Coccidioidomycosis Study Group, Tempe, Arizona

• April 2007: Scientific Assembly on Coccidioidomycosis delivered by the Kern County Public Health Department, Bakersfield, California

• November 10, 2007: Seminar on Coccidioidomycosis, Lemore, California

• April 5, 2008: 52nd National Scientific Assembly of Coccidioidomycosis Study Group, San Diego, California

• July 30, 2008: Cocci Presentation by Pappagianis, M.D. of U.C. Davis, given at the Chief Medical Officers Conference, Sacramento, California

• Sept 17-19, 2008: The California– Nevada Chapter of the American Correctional Health Services Association (CHSA) and The Institute for Medical Quality 200 Multidisciplinary Correctional Conference– San Diego, California

• April 3, 2009: Valley Fever Vaccine Project – a Retrospective, California State University, Bakersfield, California

• April 4, 2009: 53rd National Scientific Assembly of Coccidioidomycosis Study Group, Bakersfield, California

• May 12, 2009: Valley Fever: Then and Now; History and the Current Recommendation for Management of Valley Fever, Kaweah Delta Health Care District, Visalia, California

I consistently engage in ongoing self study and research of the medical literature. In the last three years, I have been giving lectures to healthcare providers in various prison institutions, as well as at the regional level. At PVSP, I use every available opportunity to give lectures and speeches on coccidioidomycosis at Grand Rounds, Correctional Treatment Center (CTC) rounds, Men Advisory Committee meetings, interdepartmental meetings, and Quality Management forums.

(Doc. 39-3, Igbinosa Decl. at ¶¶ 1-4).

Dr. Igbinosa's credentials demonstrate that he possesses the education and knowledge to provide admissible opinion evidence as to whether certain medical conditions creates a substantial risk of serious harm from Valley Fever.  *See* Fed. R. Evid. 702; *Primiano v. Cook*, 2010 WL 1660303, at *3-6 (9th Cir. 2010).  Dr. Igbinosa stated that the following medical conditions do not "make a person more at risk to contract Valley Fever or be likely to suffer complications if infected": 1) mild congestive heart failure; 2) history of resolved pneumonia; 3) history of resolved renal failure; 4) history of resolved febrile infection; 5) thrombocytosis; 6) upper respiratory infection; 7) degenerative disc disease; 8) rotator cuff tears; 9) asthma; 10) high blood pressure (hypertension); or 11) diabetes.  (Doc. 39-3, Igbinosa Decl. at ¶ 31).

Upon review of Plaintiff's medical records, Dr. Igbinosa also declared that Plaintiff had at most a mild case of congestive heart failure.  (Doc. 39-3, Igbinosa Decl. at ¶¶ 35-36; Doc. 39-10, Ex. E; Doc. 39-11, Ex. F; Doc. 39-12, Ex. G; Doc. 39-13, Ex. H; Doc. 39-14, Ex. I; Doc. 39-15, Ex. J). Moreover, upon review of Plaintiff's medical records, Dr. Igbinosa also declared that Plaintiff had resolved pneumonia, renal failure and febrile infection before being transferred to PVSP.  (Doc. 39-3, Igbinosa Decl. at ¶¶ 31, 35, 37, 38; Doc. 39-11, Ex. F; Doc. 39-16, Ex. K; Doc. 39-17, Ex. L; Doc. 39-18, Ex. M; Doc. 39-19, Ex. N; Doc. 39-20, Ex. O; Doc. 39-21, Ex. P).

Plaintiff has not submitted any admissible medical or other competent evidence that shows there is a triable issue of fact that the abovementioned eleven medical conditions place Plaintiff at substantial risk of serious harm from Valley Fever.

3.     **The "Criteria" as it Relates to Whether Plaintiff Faces Substantial Risk of Serious Harm**

Conspicuously absent in Dr. Igbinosa's declaration is whether, in his medical opinion, is being of African descent, elderly or a non-native to the endemic region are factors which pose a substantial risk of serious harm.   Equally absent is any declaration from Dr. Vilaysane who, according to Plaintiff, "acknowledged . . . that Plaintiff [was] at high risk for contracting Valley Fever while at PVSP, but refused to authorize or recommend a transfer for Plaintiff."   (Doc. 20, Amend. Compl. at p. 5).   Defendants do not address being elderly or a non-native to the endemic region; however, these categories can fall under Defendants general implicit argument that the absence of a factor from the Criteria is sufficient proof that such factors do not create a substantial risk of serious harm from Valley Fever.   (Doc. 39-1, MSJ at 2:19-2:22; 12:8-12:11; 12:27-13:2; 13:12-13:13).   However, this argument only works if the Criteria is not improperly excluding categories that would demonstrate a substantial risk of serious harm.

Defendants appear to use the "Criteria" as a catch all shield which could possibly serve to exonerate prison staff who may know of a risk but instead choose to follow prison policies which contradict the risk.   Although Defendants argue that a claim such as Plaintiff's could never prevail, it is conceivable that a prisoner may be able to demonstrate through proper evidence (such as expert testimony; evidence of disparities of medical outcomes between prisoners who are of African descent, elderly and non-native to a Valley Fever endemic region compared to the general prison population; evidence that officials responsible for creating the Criteria deliberately omitted certain risk factors) that the Criteria's omission of certain risk factors would be medically unacceptable and would amount to disregarding an excessive risk to an inmate's health.   *See, e.g.*, *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *see also*

*Helling v. McKinney*, 509 U.S. 25, 34-35 (1993) (noting that it would be impossible to rule out the possibility of a claim on substantial risk of serious harm since the success of the claim turns on the evidence).

Regardless of the shortcomings of Defendants' "Criteria" argument, Plaintiff has not submitted any admissible medical or other competent evidence that shows there is a triable issue that being of African descent, elderly or non-native to a Valley Fever endemic region places Plaintiff at substantial risk of serious harm from Valley Fever.

### 4.   Statistics Stated in Dr. Igbinosa's Declaration as it Relates to Whether Plaintiff Faces Substantial Risk of Serious Harm

Defendants argue that the statistical evidence in Dr. Igbinosa's declaration demonstrates that prisoners at PVSP in general do not face a substantial risk of serious harm.  (Doc. 39-1, MSJ at 5:26-5:27; 10:24-11:11; 12:1-12:11).  However, just as Defendants critique Plaintiff's statistics that do not cite the sources of the figures or how the statistics were obtained, Defendants statistics are similarly unreliable.  (Doc. 44, Reply, 7:24-7:25).  Just because Defendant Igbinosa is a medical doctor with extensive knowledge of Valley Fever at PVSP, that does not make his stated statistics reliable or relevant.  *See* Fed. R. Evid. 702; *Primiano v. Cook*, 2010 WL 1660303, at *3-6 (9th Cir. 2010).  For example, Defendants do not: 1) establish a foundation for Dr. Igbinosa's knowledge of statistics; 2) establish if the statistics cited are statistically significant, *i.e.*, showing that it is unlikely that the pattern of results is mere coincidence[5]; 3) describe the methodology of selecting prisoners to be tested (for example, prisoners who spend more time in administrative segregation may have less exposure to spores carried the outside air); and 4) state how many prisoners were tested (for

---

[5] See *Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 309 n. 14 (1977) (describing statistical significance); *Bridgeport Guardians, Inc. v. City of Bridgeport*, 933 F.2d 1140, 1147 (2d Cir. 1991) (defining statistical significance).

example, statistics based on a pool of 500 prisoners would be more reliable than based on a pool of 30 prisoners).

Moreover, Defendants fail to demonstrate how their statistics of the general prison population are relevant in determining whether being elderly, a non-native to the endemic region or whether being of African descent are factors which places a prisoner at substantial risk of serious harm.  As Defendants currently present their argument, they could for example, use the same statistics to state that there is no substantial risk to inmates who have HIV.  For the reasons above, Defendants statistical evidence is not reliable, not relevant and therefore, not admissible.  *See* Fed. R. Evid. 702; *Primiano v. Cook*, 2010 WL 1660303, at *3-6 (9th Cir. 2010); *Keith v. Volpe*, 858 F.2d 467, 480-81 (9th Cir. 1988) ("The proponent must show that the survey was conducted in accordance with generally accepted survey principles and that the results were used in a statistically correct manner."); *Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 550 (9th Cir. 1982) (statistical evidence must be reliable and relevant); *Paige v. California*, 233 Fed.Appx. 646, 648-49 (9th Cir. 2007) (finding no error where district court found that a statistical expert's methodology was flawed and thus accorded the statistical evidence with little weight); *Thomas v. Chao*, 65 Fed.Appx. 321 (D.C. Cir. 2003) (upholding decision where district court denied statistical evidence in the absence of expert who could testify that the proffered statistics were statistically significant). *But see Moreno v. Yates*, 2010 WL 1223131, at 2 n.1 (E.D. Cal. 2010).

**V.     Deliberate Indifference to Serious Medical Need**

    **A.     Plaintiff's Allegations in Amended Complaint**

Prior to Plaintiff's transfer from Calpatria State Prison to PVSP, doctors at Calpatria sent written instructions to inform staff at PVSP that Plaintiff needed immediate medical care and would be in need of pain medication.  (Doc. 20, Amend. Compl. at p. 3).  Plaintiff alleges that after he was

transferred to PVSP, Dr. K Vilaysane discontinued Plaintiff's pain medication without first reviewing Plaintiff's medical file.  (Doc. 20, Amend. Compl. at p. 4).

### B.    Defendants' Motion for Summary Judgment

Although Plaintiff alleges that his pain medication was terminated, Defendants assert that Dr. Vilasayne discontinued Tramadol and replaced it with Indocin.  (Doc. 39-1, MSJ at 2:23-2:27). As evidence, Defendants direct the Court to Dr. Igbinosa's Declaration and Exhibits T and U.  (Doc. 39-3, Igbinosa Decl. at ¶¶ 40-41; Doc. 39-25, Ex. T; Doc. 39-26, Ex. U).  Defendants assert that discontinuing Tramadol and prescribing Indocin instead was medically acceptable because Plaintiff was taking Sertaline to treat his depression and the pain medication Tramadol contradicts Sertaline but Indocin does not. (Doc. 39-1, MSJ at 2:23-2:27; 14: 23-15:4).  As evidence, Defendants direct the Court to Dr. Igbinosa's Declaration and Exhibits T and U.  (Doc. 39-3, Igbinosa Decl. at ¶¶ 40-41; Doc. 39-25, Ex. T; Doc. 39-26, Ex. U).  Defendants assert that Plaintiff's belief that he should have continued on Tramadol instead of an alternate pain reliever does not give rise to a deliberate indifference claim.  (Doc. 39-1, MSJ at at 15:5-15:9).

### C.    Plaintiff's Opposition

Plaintiff alleges that on the day that he arrived at PVSP on July 25, 2007, he was given one Tramedol which was less than the prescribed 50 milligrams per day. (Doc. 40, Opposition at  8:1-8:4).  Plaintiff alleges that from July 26, 2007, to August 13, he suffered extreme pain as a result of not receiving Tranadol, which was originally prescribed to him.  (Doc. 40, Opposition at  8:5-8:16). Plaintiff states that he was informed that Dr. Vilaysane discontinued all of his pain medication. (Doc. 40, Opposition at  8:12-8:14).  According to Plaintiff, then on August 14, 2007, Dr. Vilaysane (without ever seeing Plaintiff) prescribed "tylenol/codine #3 tablets" which are much weaker and lest effective than Tramedol.  (Doc. 40, Opposition at  8:15-8:18; Ex. 9 (listing history of prescriptions).  On September 6, 2007, Plaintiff was examined by Dr. Diep who found that Plaintiff

was in so much pain that he prescribed 30 milligrams of morphine twice a day.  (Doc. 40, Opposition at 8:19-8:22; Ex. 9 (listing history of prescriptions)).  According to Plaintiff, on September 28, 2007, as a result of an examination connected with Plaintiff's health care appeal, Dr. Vilaysane found that Plaintiff's condition required the most powerful analgesic the CDCR is allowed to prescribe inmates in a non-hospital setting, 30 milligrams of morphine twice daily.  (Doc. 40, Opposition at 8:23-9:3; Ex. 9 (listing history of prescriptions)).

  **D.**  **Defendants' Reply**

  Defendants argue that Plaintiff failed to demonstrate that Dr. Vilaysane's choices in prescribing pain reliever was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to Plaintiff's health.  (Doc. 44, Reply at 12:18-9:2). Defendants observe that Plaintiff's statement that he was told that Dr. Vilasayne discontinued all of Plaintiff's pain medication is contradicted by Plaintiff's own exhibit 9 which shows that Dr. Vilaysane prescribed Plaintiff Indocin on July 27, 2007 and is contradicted by Defendants' evidence. (Doc. 40, Opposition at  13:14-13:22).

  **E.**  **Analysis**

    **1.**  **Legal Standard-Deliberate Indifference to Serious Medical Need**

  A difference of opinion between an inmate and medical staff, as to the appropriate medical treatment for his condition is insufficient as a matter of law to constitute deliberate indifference.  See *Toguchi v. Chung*, 391 F.3d 1051, 1058 (2004); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1996); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989).

  Plaintiff's evidence does not contradict Defendants' evidence that Plaintiff's original pain medication (Tramadol) was replaced with and alternate pain medication (Indocin) and at no point was Plaintiff without a prescription for a pain medication.  Based on the opinion evidence provided in Dr. Igbinosa's declaration, discontinuing Tramadol and prescribing Indocin instead was medically

acceptable since Tramadol contradicted the anti-depression medication that was recently prescribed to Plaintiff at the time.  (Doc. 39-1, MSJ at 2:23-2:27; 14: 23-15:4; Doc. 39-3, Igbinosa Decl. at ¶¶ 40-41; Doc. 39-25, Ex. T; Doc. 39-26, Ex. U); *See also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).  Plaintiff's belief that he should have continued with Tramadol or a stronger pain medication instead of Indocin does not demonstrate that Dr. Vilaysane was deliberately indifferent to Plaintiff's serious medical need.  (*See also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

**VI.    Conclusion**

Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Plaintiff has the burden of showing that his various medical conditions, his race, age and status as a non-native to a Valley Fever endemic region made Plaintiff vulnerable to a substantial risk of serious harm.  *See Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Thomas v. Ponder*, 611 F.3d 1144, 1150-51 (9th Cir. 2010).  Because Plaintiff has failed to make such a showing, Defendants are entitled to summary judgment. *Celotex*, 477 U.S. at 323.  Since the case is disposed of on the merits, the Court need not address the remaining arguments.

For the reasons set forth herein, it is HEREBY RECOMMENDED that:

1.    Defendants' Motion for Summary Judgment (Doc. 39), filed May 21, 2010, by Defendants Igbinosa, Cassesi, Ahlin, Vilaysane, Tilton, Kernan, Yates, and Grannis, be granted; and

2.      that the Clerk of the Court be directed to enter judgment for the Defendants

Igbinosa, Cassesi, Ahlin, Vilaysane, Tilton, Kernan, Yates, and Grannis and

against Plaintiff.

These Findings and Recommendations will be submitted to the United States District

Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

**thirty (30) days** after being served with these Findings and Recommendations, the parties may

file written objections with the court.  The document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

objections within the specified time may waive the right to appeal the District Court's order.

*Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:      February 18, 2011

UNITED STATES MAGISTRATE JUDGE